**UNITED STATES of America,**

v.

**Kevin Anton BANDY, Defendant.**

**No. CRIM.A. 92–448–1.**

United States District Court,
E.D. Pennsylvania.

Oct. 19, 2000.

L. Felipe Restrepo, Krasner and Restrepo, Philadelphia, PA, for Defendant.

Kevin Bandy, Newark, NJ, pro se.

Robert E. Goldman, Philadelphia, PA, for U.S.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KATZ, Senior District Judge.

Now before the court is a petition by the Probation Office to revoke Kevin Bandy's supervised release. After a hearing, and upon consideration of all the evidence of record, the court makes the following findings of fact and conclusions of law.

*Findings of Fact*

1. Mr. Bandy was convicted of one count of interference with commerce by robbery and one count of interstate transportation of stolen property. On January 27, 1993, this court sentenced Mr. Bandy to seventy months imprisonment, to be followed by three years supervised release. The defendant was also ordered to pay a $100 special assessment and to pay restitution in the amount of $10,498. In imposing the sentence, the court granted the government's motion and departed downward from the applicable Sentencing Guidelines range due to the defendant's substantial assistance.

2. Mr. Bandy's criminal history category was IV. *See* J. at 5; [1] *see also* Gov't Proposed Findings of Fact and Conclusions of Law ¶ 13.

3. The conditions of Mr. Bandy's supervised release include: that he not commit another federal, state or local crime; that he notify his probation officer within seventy-two hours of being arrested or questioned by law enforcement officials; that he submit monthly written reports to his probation officer; and that he inform his probation officer within seventy-two hours of any change in residence or employment. *See* J. at 3.

4. Mr. Bandy's term of supervised release began on November 21, 1997. On January 23, 1998, Mr. Bandy was arrested in Montgomery County, Pennsylvania, and charged with retail theft, receiving stolen property, and criminal conspiracy. On February 13, 1998, while incarcerated in Montgomery County prison, he was arrested and charged with simple assault. Mr. Bandy posted bail and was released in May 1998. However, his bail was forfeited and a bench warrant was issued when he failed to appear on June 18, 1998. On August 6, 1998, Mr. Bandy was arrested in Delaware County, Pennsylvania, and charged with criminal conspiracy and retail theft. These charges were dismissed a few weeks later for lack of prosecution. Mr. Bandy was then taken back into custody by Montgomery County, and he was released again on bail on August 25, 1998. He failed to appear in Montgomery County on September 11, 1998, and a new bench warrant was issued. This warrant remains outstanding.

5. Mr. Bandy failed to inform his probation officer of his arrest in Delaware County.

6. On November 30, 1998, Mr. Bandy was arrested in Pennsauken, New Jersey and charged with unlawful means of conveyance, possession of a stolen handgun, unlawful possession of a weapon, resisting

---

1. The criminal history category on the defendant's Judgment appears to be a typographical error. According to the Presentence Investigation Report (PSI) prepared by the Probation Office, the defendant's criminal history category was VI. *See* PSI ¶¶ 33-40,

61. In addition, the defendant's sentencing guideline range of 151 to 188 months, *see* J. at 5; PSI 61, was consistent with a criminal history category of VI. *See* U.S.S.G. Sentencing Table, Ch. 5 Pt.A.

arrest and possession of hollow-nose bullets. He was convicted of criminal offenses stemming from this arrest and is currently incarcerated in a New Jersey state prison.

7. Mr. Bandy has not submitted any monthly reports since December 1997.

8. A balance of $25 remains outstanding on the defendant's special assessment. In addition, he has failed to pay restitution.

9. Since his release from Montgomery County prison in May 1998, the defendant has failed to report his changes in residence to his probation officer.

*Conclusions of Law*

■ 1. In determining the modification of supervised release, the court is to consider the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to provide just punishment, deter others, protect the public, and assist the defendant. *See* 18 U.S.C. § 3583(a), (e). Additional factors to be considered include the types of sentence available, relevant policy statements, and the need to avoid sentencing disparities. *See id.*

2. If, after considering the foregoing factors, the court finds by a preponderance of the evidence that the defendant committed the violations alleged, the court may revoke supervised release. *See* 18 U.S.C. § 3583(e)(3).

3. Under the Sentencing Guidelines, revocation is mandatory if the defendant commits a grade A or B violation of supervised release. *See* U.S.S.G. § 7B1.3(a)(1). In addition, the Guidelines state that any term of imprisonment imposed upon revocation of supervised release shall be consecutive to any sentence of imprisonment that the defendant is serving. *See id.* § 7B1.3(f).

■ 4. Because the original offenses in this case were Class C and D felonies, the court may not sentence the defendant to more than two years imprisonment upon revocation of supervised release. *See* 18 U.S.C. § 3583(e)(3).

■ 5. A court shall consider the applicable Sentencing Commission guidelines and policy statements in imposing sentences on or after September 13, 1994, for violations of probation and supervised release. *See* 18 U.S.C. § 3553(a)(4)(B). However, the Third Circuit affirmed in *United States v. Schwegel,* 126 F.3d 551 (3d Cir.1997), that the ranges set out in U.S.S.G. § 7B1.4 are only policy statements and, as such, are advisory and nonbinding. Therefore, the court may impose a sentence outside those ranges.

6. A Grade B violation is conduct that constitutes a federal, state, or local offense punishable by a term of imprisonment exceeding one year other than a crime of violence, a controlled substance offense, an offense involving possession of a firearm, or an offense punishable by a term of imprisonment of more than twenty years. *See* U.S.S.G. § 7B1.1(a). The government's proof and the submissions of the Probation Office establish by a preponderance of the evidence that Mr. Bandy's arrests in Pennsauken, New Jersey and Montgomery County, Pennsylvania constitute Grade B violations of his supervised release.

8. A Grade C violation includes a violation of any other condition of supervised release. *See* U.S.S.G. § 7B1.1(a)(3). The government's proof and the submissions of the Probation Office establish by a preponderance of the evidence that Mr. Bandy's failure to inform his probation officer of his arrest in Delaware County, failure to pay his special assessment in full, failure to pay restitution, failure to submit monthly reports, and failure to inform his probation officer of any changes in residence all constitute Grade C violations.

■ 9. As there is more than one violation of the conditions of supervised release, the court utilizes the grade of the most serious violation. *See* U.S.S.G.

§ 7B1.1(b). The defendant's grade of violation is therefore Grade B.

10. The range for a Grade B violation for a defendant with a criminal history category of IV is 12 to 18 months. *See* U.S.S.G. § 7B1.4(a).

11. In Mr. Bandy's case, a penalty of 12 months, to be served consecutively to any other sentence he is currently serving, is appropriate considering the defendant's persistent course of criminal conduct and his failure to comply with the conditions of his supervised release.